# United States Court of Appeals

**FOR THE EIGHTH CIRCUIT**

_____

No. 97-3891

_____

| | | |
|---|---|---|
| Debra A. Smith and Mark A. Thomas, | * * * | |
| Appellees, | * * | Appeal from the United States District Court for |
| v. | * * | the Eastern District of Arkansas. |
| Riceland Foods, Inc., | * * | |
| Appellant. | * | |

_____

Submitted: June 9, 1998

Filed: August 5, 1998

_____

Before WOLLMAN and MURPHY, Circuit Judges, and KYLE, District Judge.[1]


KYLE, District Judge


Riceland Foods, Inc. ("Riceland") appeals following a jury verdict in favor of the Appellees, Debra Smith ("Smith") and Mark Thomas ("Thomas"), on their retaliation claims under Title VII of the Civil Rights Act of 1964. Riceland argues that the district court erred in denying its motions for judgment as a matter of law and that it was prejudiced by comments that the district court made to the jury after it returned an inconsistent verdict and before the judge directed them to continue deliberating.

_____

[1] The Honorable Richard H. Kyle, United States District Judge for the District of Minnesota, sitting by designation.

Riceland further appeals the district court's award of attorneys' fees to the Appellees. We affirm in part and reverse in part.

## I. Background

Riceland is an Arkansas corporation that processes raw agricultural commodities, such as soybean, into finished products. It has a soybean processing division in Stuttgart, Arkansas. During the relevant time period, Leo Gingras ("Gingras") was the manager of this division.

In 1981, Thomas, an African American, began working for Riceland as a bin and leg fitter in the Stuttgart soybean processing division. At the time of his discharge in 1995, Thomas was employed as a meal loader. In 1994, Riceland hired Smith, an African American, as an assistant plant operator in the Stuttgart soybean processing division. Shortly after Smith began working for Riceland, she and Thomas became romantically involved, and the two lived together. Management personnel at Riceland were aware of this relationship and knew that Smith and Thomas were contemplating marriage.

### A. The Plant Operator Position

In September 1995, Thomas applied for a plant operator position. Donnie McFerrin ("McFerrin"), who made the hiring decision, told Thomas that he could not select him for the position because company policy prohibited married people from working together, and Smith already worked in that department. McFerrin stated that Gingras had informed him of this policy when he spoke with Gingras about the open position. Smith also applied for the plant operator position. McFerrin selected John McNally ("McNally"), a white employee, for the plant operator position, even though he had three months less seniority than Smith.

Smith believed that McFerrin's decision to hire McNally was motivated by discrimination on the basis of both gender and race, and as a result, she filed a charge of discrimination with the EEOC on October 12, 1995. Although Thomas did not file a charge of discrimination, he assisted Smith in filing her charge.

**B. The Case Center**

In December 1994, Riceland opened the Case Center, a computer learning center for its employees. Riceland required its employees to spend at least four hours per month working on educational computer programs in the Case Center, but it would pay employees up to twelve hours per month for such work. Myra McNeil ("McNeil") was in charge of administering the Case Center.

Riceland paid its employees for the number of hours that they spent in the Case Center (hereinafter "door time"), rather than for the amount of time they actually spent working on the computer programs (hereinafter "lesson time"). Riceland kept track of the amount of door time by having employees scan their employee badges when they entered the Case Center. Most employees had discrepancies between their door time and their lesson time because of the time it took them to log onto the computer and select a program. Lesson time also did not account for time an employee spent talking with McNeil or taking bathroom or smoking breaks.

**C. Investigation of Case Center Abuse**

In late November 1995, employees informed McNeil that employees were entering the Case Center but not utilizing the computer lessons while they were there. McNeil relayed this information to Gingras, who then directed her to conduct an investigation into the alleged abuse.

During the course of her investigation, McNeil compared the pay records and

computer records of the employees who were using the Case Center. McNeil acknowledged that many employees had discrepancies between their door time and lesson time. If a discrepancy was large enough, McNeil would look at the employee's lesson time for the days the employee had been paid to see if she could verify whether the employee had spent any time on a computer lesson that day. If the employee's lesson time indicated that he or she had spent some time working on a lesson for the days in question, McNeil would not report this employee to Gingras. At least eight employees had time discrepancies larger than those of the Appellees, but they were not reported to Gingras.

On approximately December 7, 1995, McNeil reported to Gingras that Smith had been abusing the Case Center. McNeil told Gingras that a comparison of the door time and the lesson time showed that Smith had been paid for 16.5 hours in the Case Center, but that she had only spent 8.5 hours working on lessons. The records also showed that Smith had been paid for 4 hours of time spent in the Case Center on two days, but her lesson time revealed that Smith could have been working on lessons for only a few minutes on those days. McNeil also claimed that she had received verbal statements from three employees implicating Smith in Case Center abuse.

Based on McNeil's report, Gingras decided to fire Smith. Gingras testified that he decided to terminate her because Riceland had "multiple statements from employees" which indicated that Smith had abused the Case Center by clocking into the Case Center, logging onto the computers, and then leaving and coming back at a later time to log out. On December 8, 1995, Gingras met with Smith and told her that she was being fired for falsifying company records.

The evidence at trial, however, revealed that only one of the employees implicating Smith actually gave a statement to McNeil before Smith was fired. Garland Peterson ("Peterson") told McNeil that on November 28, 1995, Smith and Thomas were logged onto a computer when he arrived in the Case Center, and he was there for

-4-

approximately 30 minutes before they returned to log out.[2]  The time records from November 28, 1995, indicated that neither Smith nor Thomas had abused the Case Center on that day.  Moreover, the records revealed that Peterson had been paid for over two hours of time spent in the Case Center on November 28, 1995, but he had no time registered on the computer for that day.  McNeil did not investigate Peterson's discrepancy, and Peterson was not reported to Gingras. Finally, the testimony at trial established that another employee, Bobbie Fread ("Fread"), had been implicated in only one employee statement for being absent from the Case Center for approximately 20 minutes when she was logged onto a computer.  Because the records could not verify the employee's statement, Fread was only given a warning.

Thomas did not have any discrepancies between his door time and his lesson time.  Riceland had paid him for fewer hours than he had spent in the Case Center because he was still on the clock in the plant during some of this time.  Riceland allowed employees, with their supervisor's permission, to go to the Case Center and work on computer lessons when plant activity was slow.  On approximately December 18, 1995, McNeil reported Thomas to Gingras because he was allegedly implicated in the three statements that she had received regarding Smith.[3]  Gingras met with Thomas on December 19, 1995, and advised him that other employees had given written statements that he was abusing the Case Center, and that Riceland had decided to terminate him for falsifying company records.

---

[2]  The evidence at trial revealed that another of the three employees who had allegedly given a statement implicating Smith and Thomas, Vernon Moore ("Moore"), did not give McNeil his statement until after both Smith and Thomas were terminated.  The third statement was allegedly given by James Collum ("Collum"), but neither party has directed the Court to any portion of the record indicating the substance of his statement or when he orally gave it to McNeil.  Collum did provide a written statement to McNeil on December 15, 1995, but this statement was not admitted into evidence.

[3]  At the time Thomas was fired, McNeil had received Peterson's verbal and Collum's written statement, both accusing Thomas of abusing the Case Center.

Riceland disciplined three other employees for abusing the Case Center. Gingras claimed that these employees were not fired because Riceland did not have employee statements implicating them in abusing the Case Center.

After their terminations, Smith and Thomas filed claims against Riceland. Smith alleged that Riceland had denied her a promotion and subsequently terminated her because of her race and gender, in violation of Title VII and 42 U.S.C. § 1981. She further alleged that Riceland discharged her in retaliation for filing a charge of discrimination with the EEOC, in violation of Title VII. Thomas alleged that Riceland had denied him a promotion and terminated him because of his race and that it also discharged him in retaliation for assisting Smith with the filing of her discrimination charge, in violation of Title VII.

The case proceeded to a trial by jury in June 1997. The district court denied motions for judgment as a matter of law. The jury returned a verdict in favor of Riceland on Appellees' failure to promote and discriminatory discharge claims. With respect to Appellees' retaliation claims, the jury returned a verdict in favor of Smith and Thomas, awarding Smith $20,750 in damages and Thomas $31,500 in damages.

## II. Denial of Riceland's Motions for Judgment as a Matter of Law

Riceland claims that the district court erred in denying its motions for judgment as a matter of law on the Appellees' retaliation claims. It contends that both Smith and Thomas failed to establish the third element of their prima facie cases of retaliation -- a causal connection between their statutorily protected activity and their termination -- and that both failed to produce evidence that Riceland's legitimate, nonretaliatory reasons for their discharges were pretextual.

This Court reviews a district court's denial of a motion for judgment as a matter of law de novo. Coffman v. Tracker Marine, 141 F.3d 1241, 1245 (8th Cir. 1998). We must determine whether there was sufficient evidence to support a jury verdict. Id. A jury's verdict must be affirmed "unless, viewing the evidence in the light most favorable to the prevailing party, we conclude that a reasonable jury could not have found for that party." Cross v. Cleaver, 142 F.3d 1059, 1066 (8th Cir. 1998). If, however, reasonable persons could differ as to the conclusion to be drawn from the evidence, the motion must be denied. Ryther v. KARE 11, 108 F.3d 832, 844 (8th Cir.) (en banc), cert. denied, 117 S. Ct. 2510 (1997).

Title VII prohibits employers from retaliating against employees who file charges of discrimination or who assist others in opposing discrimination. 42 U.S.C. § 2000e-3(a). The legal framework for analyzing retaliation claims under Title VII is the familiar three-stage, burden-shifting test set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S. Ct. 1817 (1973). See, e.g., Stevens v. St. Louis Univ. Med. Ctr., 97 F.3d 268, 270 (8th Cir. 1996).

Under this analysis, a plaintiff must first establish a prima facie case of retaliation. Coffman, 141 F.3d at 1245. To do this, a plaintiff must show that: (1) she engaged in statutorily protected activity; (2) she suffered an adverse employment action; and (3) there was a causal connection between the adverse employment action and the protected activity. Stevens, 97 F.3d at 270. A defendant must then rebut the plaintiff's prima facie case by presenting evidence of a legitimate, non-retaliatory reason for the action it took against the plaintiff. Coffman, 141 F.3d at 1245. If the defendant makes this showing, the plaintiff must then show that the defendant's proffered reason was a pretext and that illegal retaliation was a motivating reason for the defendant's decision. Id. The fundamental issue is whether the Appellees produced sufficient evidence to allow a jury reasonably to find that Riceland intentionally retaliated against them because of their statutorily protected conduct. See Ryther, 108 F.3d at 838.

## A. Thomas

Riceland contends that Thomas failed to produce sufficient evidence to support the third element of his prima facie case -- that there was a causal connection between his statutorily protected activity and his termination. It argues that there was no evidence presented at trial upon which a reasonable jury could conclude that anyone at Riceland knew that Thomas had helped Smith file her charge of discrimination, and that without such knowledge, a causal connection between Thomas' assistance of Smith and his termination cannot exist.

In order to establish the third element of his prima facie case of retaliation, Thomas needed to present evidence that Riceland knew that he had engaged in statutorily protected activity. See Simon v. Simmons Foods, Inc., 49 F.3d 386, 389 (8th Cir. 1995) (stating that a plaintiff must show that "the employer had actual or constructive knowledge of the protected conduct" in order to establish a prima facie case of retaliation); Wolff v. Berkley, Inc., 938 F.2d 100, 103 (8th Cir. 1991) (stating that a causal link between statutorily protected activity and an adverse employment action "does not exist if the employer is not aware of the employee's statutorily protected activity"). We find that, based upon the evidence at trial, no reasonable jury could have found that Riceland knew that Thomas had helped Smith in filing her charge of discrimination, and therefore, no reasonable jury could have found that a causal connection existed between Thomas' assistance of Smith and his termination.

Thomas acknowledges that there was no direct evidence at trial that anyone at Riceland knew that he had helped Smith file her charge of discrimination. Despite this, he contends that because Riceland knew that he and Smith were living together and had treated them as a married couple in the past, and because Riceland knew that Smith had filed a charge of discrimination, the jury could reasonably have concluded that Riceland must have known that Thomas aided Smith in filing her charge. We conclude that this evidence is insufficient to support a reasonable finding that Riceland knew that Thomas

had engaged in statutorily protected activity. Instead, the jury's verdict was based upon complete speculation, rather than any reasonable inferences created by the evidence, that Riceland knew that Thomas had helped Smith file her charge. Riceland, therefore, was entitled to judgment as a matter of law on Thomas' retaliation claim.

In the alternative, Thomas argues that he is not required to show that he engaged in statutorily protected activity about which Riceland had knowledge in order to establish his prima facie case. Instead, he asks this Court to expand the protection given by Title VII's anti-retaliation provision to prohibit employers from taking adverse action against employees whose spouses or significant others have engaged in statutorily protected activity against the employer.

Title VII prohibits employers from discriminating against an employee "because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e-3(a). This Court's decisions on retaliation claims have consistently held that, in order to establish a prima facie case of discrimination, the employee must have engaged in statutorily protected activity. See, e.g., Smith v. St. Louis Univ., 109 F.3d 1261, 1265-66 (8th Cir. 1997); Stevens, 97 F.3d at 270. We believe that the rule advocated by Thomas -- that a plaintiff bringing a retaliation claim need not have personally engaged in statutorily protected activity if his or her spouse or significant other, who works for the same employer, has done so -- is neither supported by the plain language of Title VII nor necessary to protect third parties, such as spouses or significant others, from retaliation. See Holt v. JTM Indus., Inc., 89 F.3d 1224, 1226-27 (5th Cir. 1996), cert. denied, 117 S. Ct. 1821 (1997). Title VII already offers broad protection to such individuals by prohibiting employers from retaliating against employees for "assist[ing] or participat[ing] in any manner" in a proceeding under Title VII. Accordingly, we hold that a plaintiff bringing a retaliation claim under Title VII must establish that she personally engaged in the protected conduct.

Because we conclude that the district court erred in denying Riceland's motion for judgment as a matter with respect to Thomas' retaliation claim, we reverse the decision of the district court on Thomas' retaliation claim.[4]

## B. Smith

Riceland argues that Smith failed to establish the third element of her prima facie case -- that there was a causal connection between the filing of her charge of discrimination and her termination. Riceland contends that the timing between Smith's charge of discrimination and her discharge is insufficient, as a matter of law, to create an inference of a causal connection between the two.

We find that Riceland's position is not supported by Eighth Circuit precedent. This Court has noted that a plaintiff can establish a causal connection between statutorily protected activity and an adverse employment action through circumstantial evidence, such as the timing between the two events.[5] See Reich, 32 F.3d at 365 n.4.

---

[4] In its appeal, Riceland argues that the district court improperly excluded statements that Thomas had made at the meeting where Gingras informed him that he was fired. Because we conclude that Riceland was entitled to judgment as a matter of law with respect to Thomas' retaliation claim, we need not address this issue.

[5] In support of its contention, Riceland relies upon Nelson v. J.C. Penney Co., Inc., 75 F.3d 343 (8th Cir.), cert. denied, 117 S. Ct. 61 (1996), in which we held that, in light of all of the circumstances of the case, including the facts that the supervisors who made the decision to fire the plaintiff did not discuss his charge of discrimination before he was fired and that the plaintiff had been disciplined and warned about the status of his job before his employer became aware of his charge of discrimination, "we cannot agree with the trial court that the mere coincidence of timing established a submissible case of retaliatory discharge." Id. at 346. In making this determination, it is unclear whether the Nelson court was addressing the issue of whether the plaintiff had established his prima facie case of retaliation or the issue of whether he had submitted sufficient evidence to show that the defendant's proffered reason for his termination was a pretext for retaliation. We believe that Nelson should not be read to stand for the proposition that timing alone is never sufficient to establish the third element of a prima facie case of retaliation.

Moreover, this Court has found that periods of time between statutorily protected activity and adverse employment actions longer than the three-month period in the instant case were sufficient to create an inference of the requisite causal connection. See, e.g., Smith, 109 F.3d at 1266. Finally, we believe that Smith has presented evidence, in addition to the timing between the filing of her charge and her termination, that creates a causal connection between the two events. She presented evidence that management at Riceland confronted her about filing her charge and that other employees who had not filed charges of discrimination were not investigated as closely or punished as severely as she was, even though they had been paid for time spent in the Case Center on days when they had no lesson time. Based upon this evidence, we find that Smith has presented sufficient evidence upon which a jury could reasonably conclude that a causal connection existed between the filing of her charge of discrimination and her termination.

Riceland also argues that Smith failed to present evidence that its legitimate, non-retaliatory reason for her termination -- that computer records and other employees demonstrated that she had abused the Case Center -- was a pretext for illegal retaliation. After having reviewed the record carefully, we find that Smith presented sufficient evidence to allow a reasonable jury to find that Riceland intentionally discriminated against her on the basis of having filed a charge of discrimination against Riceland.

In addition to the evidence establishing her prima facie case of retaliation, Smith presented evidence at trial showing that Riceland's explanation for her termination was a fabrication. McNeil testified that, at the time she reported Smith to Gingras, three employees had given her oral statements implicating Smith for getting paid for time in the Case Center when she was not present. In addition, Gingras testified that he decided to fire Smith because the company had numerous statements from other

-11-

employees implicating her in Case Center abuse. The evidence at trial, however, indicated that at the time of Smith's termination, McNeil had received only one such oral complaint implicating Smith. Moreover, this complaint came from an individual who had been paid for time spent in the Case Center when he had no registered lesson time, but he was not investigated further. Thus, the jury could have reasonably concluded that Gingras' stated reason for firing Smith was not true. In addition, the testimony revealed that other employees who had not filed charges of discrimination but had been paid for time spent in the Case Center on days when they had no lesson time were not investigated as closely or punished as harshly as Smith and that their explanations for the discrepancies in their time were accepted by Riceland. This evidence is sufficient to support the jury's verdict in favor of Smith on her retaliation claim. We conclude, therefore, that the district court properly denied Riceland's motions for judgment as a matter of law.

## III. Inconsistency in the Verdict Form

The verdict form submitted to the jury on Smith's retaliation claim required the jury to answer the following interrogatory if it found in favor of Smith: "Has it been proved by the greater weight of the evidence that Defendant would have discharged Plaintiff regardless of her filing an EEOC charge of discrimination?" The verdict form also instructed the jury that it should answer questions regarding Smith's damages only if it answered the previous question "no," and if it answered "yes," then it had completed its deliberations on Smith's retaliation claim.

When the jury originally returned its verdict, it indicated that it had found in favor of Smith on her retaliation claim. The jury also answered "yes" to the question of whether Riceland would have fired Smith even if she had not filed an EEOC charge. Despite the district court's instruction to the contrary, the jury answered the damages question, finding that Smith had lost wages and benefits equaling $20,750.

After publishing the jury's verdict, the district court discussed the jury's findings on Smith's retaliation claim with the attorneys. The district court indicated that it believed that there was a conflict in the jury's verdict on the retaliation claim and that the jury had been confused by the court's instruction because it had awarded Smith damages, in contradiction to the instruction it had been given about when to answer the damages questions. After hearing objections from counsel, the district court made the following statement to the jury:

> There appears to be a conflict in the verdict. Now, relative to on the retaliation claim of plaintiff Debra Smith as submitted in instruction number 12, we find in favor of Debra A. Smith plaintiff. Then you move down and here is what the question is: Has it been proved by the greater weight of the evidence that defendant would have discharged plaintiff regardless of her filing an EEOC charge of discrimination? Now let me say this. The question could have been drafted more clear. The answer you put is yes.
>
> Let me explain what the question is really saying. What you did, you went ahead and found that she lost wages of $20,750, no compensatory damages. The question is this: if she had not filed the EEOC discrimination charge would she not have been discharged? Would Riceland have not discharged her if she had not filed the EEOC claim? But the way the question -- the lawyers drafted this. The Court went along with it. It could have been clearer. But there is a conflict, because in order to justify recovery, it should have been no.
>
> . . .
>
> What I'm going to do is return these forms to you and let you retire to the jury room and consider these two verdicts.

(Tr. 830-833.) The jury deliberated for a brief period of time, and then returned a

-13-

verdict that had one change from their previous verdict; they answered "no" to the question of whether Riceland would have discharged Smith even if she had not filed a charge of discrimination.  Next to this question, the foreperson wrote the word "error."

Riceland argues that the district court abused its discretion in the manner that it instructed the jury about the discrepancy between its answer to the interrogatory regarding whether Riceland would have discharged Smith if she had not filed a charge of discrimination and its answering of the damages questions.  Riceland contends that the district court's comments caused the jury to believe that it was required to go back and change its answer to the interrogatory.

A district court has discretion to decide whether a jury's findings on a verdict form are incomplete, confusing, or inconsistent and whether to resubmit the claim to the jury.[6] Williams v. KETV Television, Inc., 26 F.3d 1439, 1443 (8th Cir. 1994); Hauser v. Kubalak, 929 F.2d 1305, 1308 (8th Cir. 1991).  "The district judge, who has observed the jury during the trial, prepared the special verdict questions and explained them to the jury, is in the best position to determine whether the answers reflect confusion or uncertainty."  Hauser, 929 F.2d at 1308.  If a district court decides to address a jury on an inconsistency in its findings, the court must not pressure or coerce the jury, either explicitly or subtly, to reach a certain result through its direction to the jury to reconsider its findings.  See Karl v. Burlington N. R.R. Co., 880 F.2d 68, 73 (8th Cir. 1989).

---

[6] Smith argues that Riceland did not object to the manner in which the district court instructed the jury about the inconsistency.  We reject this contention.  In its objections to the district court on this issue, Riceland stated: "Just for purposes of the record, Your Honor, I think your oral statements to the jury before they went back out changed the verdict form."  (Tr. 841.)  This objection did raise the issue of the manner in which the district court addressed the jury, thus preserving the issue for appeal.

We find that the district court did not abuse its discretion by the manner in which it addressed the jury and instructed it on the inconsistency between its answer to the interrogatory and its award of damages on Smith's retaliation claim. Riceland argues that the exchange that took place between the district court and the jury foreperson after the court read the second verdict on the retaliation claims demonstrates that the district court pressured the jury to change its verdict.[7] We disagree. A review of the

_____

[7] After the district court read the jury's second verdict on Smith's retaliation claim, the following exchange took place between the court and the jury foreperson:

> The Court: In order to make the record crystal clear the clerk did not read, on the left side of this question, has it been proved by the greater weight of the evidence that defendant would have discharged plaintiff regardless of her filing an EEOC charge of discrimination? Presently no is checked. Previously yes was checked and there's a notation "error."
> . . .
> Was there a misunderstanding of that term is the reason that was checked?
>
> The Foreman: I thought we had to -- I thought we had them wrong. The way we had them marked yes, so I thought we were supposed to go back -- I asked everybody in there and they said mark no. So I marked no.
>
> The Court: What I'm saying initially yes was checked and an error was made initially in checking yes. Is that what you are saying?
>
> The Foreman: Yes, Your Honor.
> . . .
> The Court: And as I understand it, initially you checked yes, but you had planned to check no, is that correct?
>
> The Foreman: Yes, Your Honor.

(Tr. 836-38.) The district court then asked the jurors individually whether they had initially intended to answer no to the interrogatory question but had mistakenly checked yes, and they all indicated that the court accurately described what had occurred. (Id. at 838-840.)

-15-

record indicates that the jury foreperson initially made a mistake and did not answer the interrogatory in a manner consistent with how the jury intended to answer that question. While the district court could have been more clear in its instructions to the jury on the inconsistency in its verdict, we do not believe that it pressured the jury, through its comments to the jury, to change its verdict in favor of Smith.[8]

We affirm the district court with respect to Smith's retaliation claim, reverse with respect to Thomas' retaliation claim, and remand the case to the district court for proceedings consistent with this opinion.

A true copy.

Attest:

Clerk, U.S. Court of Appeals, Eighth Circuit.

---

[8] Riceland has also argued on appeal the district court abused its discretion in the amount of attorneys' fees and costs it awarded Appellees. In light of the fact that we have determined that Thomas is no longer a prevailing party because Riceland was entitled to judgment as a matter of law on his retaliation claim, we remand the issue of the appropriate amount of attorneys' fees to the district court.