*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

File Name: 08a0129p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

ERIC L. THOMPSON,

　　　　　　　*Plaintiff-Appellant*,

　　　*v.*

NORTH AMERICAN STAINLESS, LP,

　　　　　　　*Defendant-Appellee*.

No. 07-5040

---

Appeal from the United States District Court
for the Eastern District of Kentucky at Frankfort.
No. 05-00002—Karen K. Caldwell, District Judge.

Argued: September 18, 2007

Decided and Filed: March 31, 2008

Before: MOORE and GRIFFIN, Circuit Judges; TARNOW, District Judge.[*]

---

## COUNSEL

**ARGUED:** David O'Brien Suetholz, SEGAL, LINDSAY & JAMES, Louisville, Kentucky, for Appellant. Leigh G. Latherow, VanANTWERP, MONGE, JONES, EDWARDS & McCANN, LLP, Ashland, Kentucky, for Appellee. Gail S. Coleman, EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, Washington, D.C., for Amicus Curiae. **ON BRIEF:** David O'Brien Suetholz, Joseph Delano Wibbels, Jr., SEGAL, LINDSAY & JAMES, Louisville, Kentucky, for Appellant. Leigh G. Latherow, Gregory L. Monge, VanANTWERP, MONGE, JONES, EDWARDS & McCANN, LLP, Ashland, Kentucky, for Appellee. Gail S. Coleman, EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, Washington, D.C., for Amicus Curiae.

　　　　TARNOW, D. J., delivered the opinion of the court, in which MOORE, J., joined. GRIFFIN, J. (pp. 7-12), delivered a separate dissenting opinion.

---

## OPINION

---

　　　　TARNOW, District Judge.　Shortly after Appellant Eric Thompson's fiancée filed a discrimination charge with the EEOC against their common employer, the Appellee, Thompson was terminated.　The parties to this appeal ask whether the anti-retaliation provisions in Title VII of the

---

[*] The Honorable Arthur J. Tarnow, United States District Judge for the Eastern District of Michigan, sitting by designation.

Civil Rights Act protect a related or associated third party from retaliation under such circumstances. We hold that that they do, and REVERSE the district court's grant of summary judgment to the employer.

I.

From February 1997 through March 2003, the plaintiff, Eric L. Thompson, worked as a metallurgical engineer for defendant North American Stainless, LP, the owner and operator of a stainless steel manufacturing facility in Carroll County, Kentucky. Thompson met Miriam Regalado, currently his wife, when she was hired by the defendant in 2000, and the couple began dating shortly thereafter. At the time of Thompson's termination, he and Regalado were engaged to be married, and their relationship was common knowledge at North American Stainless.

According to the complaint, Regalado filed a charge with the Equal Employment Opportunity Commission (EEOC) in September 2002, alleging that her supervisors discriminated against her based on her gender. On February 13, 2003, the EEOC notified North American Stainless of Regalado's charge. Slightly more than three weeks later, on March 7, 2003, the defendant terminated Thompson's employment. Thompson alleges that he was terminated in retaliation for his then-fiancée's EEOC charge, while North American Stainless contends that performance-based reasons supported the plaintiff's termination.

Thompson filed a charge with the EEOC, which conducted an investigation and found "reasonable cause to believe that [the Defendant] violated Title VII." After conciliation efforts were unsuccessful, the EEOC issued a right-to-sue letter and Thompson filed a cause of action against North American Stainless in the Eastern District of Kentucky.

North American Stainless moved for summary judgment, contending that the plaintiff's claim, that his "relationship to Miriam Thompson [née Regalado] was the sole motivating factor in his termination," was insufficient as a matter of law to support a cause of action under Title VII. The district court granted the defendant's motion, holding that Thompson failed to state a claim under either the anti-discrimination provision contained in 42 U.S.C. § 2000e-2(a) or the anti-retaliation provision set forth in 42 U.S.C. § 2000e-3(a).

The plaintiff appeals from this judgment, contending that the anti-retaliation provision of Title VII prohibits an employer from terminating an employee based on the protected activity of his fiancée who works for the same employer. The EEOC has filed an *amicus curiae* brief in support of plaintiff's position.

II.

A.

A district court's grant of summary judgment is reviewed *de novo*. *Cicero v. Borg-Warner Automotive, Inc.*, 280 F.3d 579, 583 (6th Cir. 2002) (citing *Doren v. Battle Creek Health Sys.*, 187 F.3d 595, 597 (6th Cir.1999)). In reviewing the decision, we apply the same legal standard as the lower court. *Cline v. Catholic Diocese of Toledo*, 206 F.3d 651, 657 (6th Cir. 2000). Summary judgment is only appropriate when the evidence submitted shows "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Cicero*, 280 F.3d at 583 (quoting Fed.R.Civ.P. 56(c)).

B.

Section 704(a) of Title VII of the Civil Rights Act prevents retaliation by employers for two types of activity, opposition, and participation.

> It shall be an unlawful employment practice for an employer to discriminate against any of his employees . . . because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter.

42 U.S.C. § 2000e-3.

We are asked whether section 704(a)'s protections extend to persons not expressly described in the statute. Specifically, does Title VII prohibit employers from taking retaliatory action against employees not directly involved in protected activity, but who are so closely related to or associated with those who are directly involved, that it is clear that the protected activity motivated the employer's action? As such conduct would undermine the purposes of Title VII, we hold that such retaliatory action is prohibited.

C.

Defendant argues that the statute is unambiguous. That is, the plain language of the statute indicates that the only individual protected by 704(a) is the one who conducted the protected activity.

However, "[i]t is a well-established canon of statutory construction that a court should go beyond the literal language of a statute if reliance on that language would defeat the plain purpose of the statute[.]" *Bob Jones University v. United States*, 461 U.S. 574, 586, 103 S.Ct. 2017, 2025 (1983). Further, "it is well settled that, in interpreting a statute, the court will not look merely to a particular clause in which general words may be used, but *will take in connection with it the whole statute . . . and the objects and policy of the law. . . .*" *Id*. (alterations in original) (quoting *Brown v. Duchesne*, 19 How. 183, 194, 15 L.Ed. 595 (1857)).

*Robinson v. Shell Oil*, 519 U.S. 337, 117 S.Ct. 843 (1997), which also interpreted section 704(a), stated that whether a statute is plain and unambiguous can only be evaluated "with regard to the particular dispute in the case." *Id*. at 340. A court must evaluate not only the contested statutory language, but also "the specific context in which that language is used, and the broader context of the statute as a whole." *Id*. at 341, 117 S.Ct. at 846.

*Burlington Northern and Santa Fe Railway Co. v. White*, – U.S. –, 126 S.Ct. 2405 (2006), discussed that broader context and the object of Title VII: "The anti-retaliation provision seeks to secure [a non-discriminatory workplace] by preventing an employer from interfering (through retaliation) with an employee's efforts to secure or advance enforcement of the Act's basic guarantees." *Id*. at 2412. It characterized section 704(a)'s primary purpose as "[m]aintaining unfettered access to statutory remedial mechanisms." *Id*. (quoting *Robinson*, 519 U.S. 337, 346, 117 S.Ct. 843). *Burlington* held that a plaintiff must demonstrate a "materially adverse" retaliatory action, which it defined as one that "well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Id*. at 2415 (quotation marks and citations omitted).

Here, a literal reading of section 704(a) suggests a prohibition on employer retaliation only when it is directed to the individual who conducted the protected activity. Such a reading, however, "defeats the plain purpose" of Title VII. There is no doubt that an employer's retaliation against a

family member after an employee files an EEOC charge would, under *Burlington*, dissuade "reasonable workers" from such an action.

Support for our holding is found as well in the EEOC Compliance Manual. *See Meritor Sav. Bank, FSB v. Vinson*,  477 U.S. 57, 65, 106 S.Ct. 2399, 2404 (1986) ("[EEOC] Guidelines, while not controlling . . . do constitute a body of experience and informed judgment to which courts and litigants may properly resort for guidance.") (quotation marks and citations omitted); *Griggs v. Duke Power Co.*,  401 U.S. 424, 433-34, 91 S.Ct. 849, 854-55 (1971) ("The administrative interpretation of the [Civil Rights] Act by the enforcing agency is entitled to great deference.").  The *Burlington* decision also found support in the Compliance Manual for its interpretation of section 704(a), *see* 126 S.Ct. at 2413-14, as did *Robinson*, *see* 117 S.Ct. at 848.

The Compliance Manual expressly states that a person claiming retaliation need not be the one who conducted the protected activity.  "Title VII . . . prohibit[s] retaliation against someone *so closely related to or associated with* the person exercising his or her statutory rights that it would discourage that person from pursuing those rights."  *Johnson v. University of Cincinnati*,  215 F.3d 561, 580 (6th Cir. 2000) (emphasis added) (quoting EEOC Compliance Manual (CCH) ¶ 8006).

D.

Our holding today is consistent with Circuit precedent, as well as interpretive practices of both this Court and the Supreme Court.  In *EEOC v. Ohio Edison Co.*, 7 F.3d 541 (6th Cir. 1993), we observed that

> courts have routinely adopted interpretations of retaliation provisions in employment statutes that might be viewed as outside the literal terms of the statute in order to effectuate Congress's clear purpose in proscribing retaliatory activity. Contrary to defendant's assertions, courts have frequently applied the retaliation provisions of employment statutes to matters not expressly covered by the literal terms of these statutes where the policy behind the statute supports a non-exclusive reading of the statutory language.

*Id*. at 545.  We expressly stated, albeit in dicta, that "[w]e agreed with the reasoning of the *DeMedina* court that a plaintiff's allegation of reprisal for a relative's anti-discrimination activities states a claim upon which relief can be granted under Title VII." *Id*. at 544 (referring to *DeMedina v. Reinhardt*, 444 F.Supp. 573 (D.D.C.1978), *aff'd in part and remanded in part*, 686 F.2d 997 (D.C.Cir.1982)).

Other cases have gone beyond literal language to support a construction that corresponded with a statute's purpose.  *Robinson*, *supra*, interpreted section 704(a)'s prohibition against an employer "discriminat[ing] against any of his employees" to include *former* employees, because such an interpretation was "more consistent with the broader context of Title VII and the primary purpose of § 704(a)."  117 S.Ct. at  849.

In *Tetro v. Elliott Popham Pontiac, Oldsmobile, Buick, and GMC Trucks, Inc.*  173 F.3d 988 (6th Cir. 1999), a white former employee sued his employer for discrimination, alleging he had been discharged because he had a biracial child.  *Id*. at 994.  After reviewing both the purpose of Title VII and EEOC interpretations, we held that Title VII's prohibition against discrimination "because of such individual's race," 42 U.S.C. § 2000e-2(a), extended to *indirect* discrimination, despite the term's absence from the statute.  *Id*. at 995.

In *NLRB v. Scrivener*, 405 U.S. 117, 121, 92 S.Ct. 798, 801, 31 L.Ed.2d 79 (1972),[1] the Court interpreted section 8(a) of the National Labor Relations Act, which prohibited employers from "discharg[ing] or otherwise discriminat[ing] against an employee because he has filed charges or given testimony under this Act." *Id*. at 118 (quoting 29 U.S.C. § 158). Despite the plain language, the Court reversed a court of appeals ruling that an employee enjoyed no protection from reprisals for other than formal charges or formal testimony. *Id*. at 121. It reasoned that the broader purpose of section 8(a) required protection for any participation in the investigative process. *Id*. Freedom from retaliation was necessary "to prevent the Board's channels of information from being dried up by employer intimidation of prospective complainants and witnesses." *Id*. at 122 (quoting *John Hancock Mut. Life Ins. Co. v. NLRB*, 191 F.2d 483, 485, 89 U.S.App.D.C. 261, 263 (1951)).

E.

The district court relied in part on our ruling in *Bell v. Safety Grooving & Grinding, LP.*, 107 Fed. App'x 607. In *Bell*, the Court affirmed a dismissal of a case under both 42 U.S.C. §§ 2000e-2 and 2000e-3. Contrary to the lower court's characterization, *Bell*, an unpublished disposition, only considered plaintiff's association with his girlfriend as it related to the discrimination claim. *Id*. at 609. The basis the court considered for the retaliation claim, under § 2000e-3, was Bell's "opposition" activities. *Id. Bell* did not analyze or decide whether § 2000e-3(a) reached retaliation claims brought under a third-party association theory.

However, the lower court acknowledged that its ruling would undermine the purposes of Title VII. That is, it recognized "that retaliating against a spouse or close associate of an employee will deter the employee from engaging in protected activity just as much as if the employee were himself retaliated against." *Thompson v. North American Stainless, LP*, 435 F.Supp.2d 633, 639 (E.D.Ky. 2006).

Other courts ruling similarly have made the same observation. *See*, *e.g.*, *Fogleman v. Mercy Hosp., Inc.*, 283 F.3d 561, 569 (3rd. Cir. 2002) ("Allowing employers to retaliate via friends and family, therefore, would appear to be in significant tension with the overall purpose of the anti-retaliation provisions, which are intended to promote the reporting, investigation, and correction of discriminatory conduct in the workplace."); *Holt v. JTM Industries, Inc.*, 89 F.3d 1224, 1227 (5th Cir. 1996) ("We recognize that there is a possible risk that an employer will discriminate against a complaining employee's relative or friend in retaliation for the complaining employee's actions."). *Fogleman* even noted that "as the Seventh Circuit sagely observed, 'To retaliate against a man by hurting a member of his family is an ancient method of revenge, and is not unknown in the field of labor relations.'" *Id*. (quoting *NLRB v. Advertisers Mfg. Co.,* 823 F.2d 1086, 1088 (7th Cir.1987)).

The dissent asserts that "before today, no circuit court of appeals has held that Title VII creates a claim for third-party retaliation," *infra* p. 10. In fact, the Eleventh Circuit characterized as "wrongful retaliatory conduct" an EEOC claimant's charge that her husband was called by the university (their common employer) and told he would be happier teaching elsewhere. *Wu v. Thomas*, 863 F.2d 1543, 1547 (11th Cir. 1989). In addition, the Seventh Circuit's decision in *McDonnell v. Cisneros*, 84 F.3d 256, 262 (7th Cir. 1996) supports a broader reading of section 704(a), and cites *Wu* with approval. *Id*. at 262 ("*Wu v. Thomas*, 863 F.2d 1543, 1547-48 (11th Cir.1989), goes even further in liberally interpreting section 2000e-3(a) to accomplish its evident purpose . . .").

Other courts have expressed concerns as to whether this decision will result in a flood of suits from relatives and associates of those who file EEOC charges. *See*, *e.g.*, *Fogleman*, 283 F.3d

---

[1]The Supreme Court has relied on the National Labor Relations Act to "draw[] analogies . . . in other Title VII contexts." *Burlington*, 126 S.Ct. at 2414.

at 570 ("Congress may have feared that expanding the class of potential anti-discrimination plaintiffs beyond those who have engaged in protected activity to include anyone whose friends or relatives have engaged in protected activity would open the door to frivolous lawsuits and interfere with an employer's prerogative to fire at-will employees.").

However, *Ohio Edison*, *supra*, opened that door in this Circuit in 1993, and very few cases asserting a similar cause of action have been seen. Furthermore, as a decision which permitted the brother of an EEOC claimant to maintain such an action observed, "[t]hat Plaintiff can state a claim does not establish the EEOC can prove the elements of its case." *EEOC v. Nalbandian Sales, Inc.*, 36 F.Supp.2d 1206, 1213 (E.D.Cal. 1998). As part of a prima facie retaliation case, all such claimants must demonstrate, *inter alia*, "that there was a causal connection between the protected activity and adverse employment action." *Balmer v. HCA, Inc.*, 423 F.3d 606, 614 (6th Cir. 2005). The requirement of a prima facie case in general, and a causal link specifically protect employers from defending against meritless suits.

Of greater concern to the court would be the result of a contrary ruling. That is, permitting employers to retaliate with impunity for opposition to unlawful practices, filing EEOC charges or otherwise participating in such efforts, as long as that retaliation is only directed at family members and friends, and not the individual conducting the protected activity. As *DeMedina* put it, "tolerance of third-party reprisals would, no less than the tolerance of direct reprisals, deter persons from exercising their protected rights under Title VII." 444 F.Supp. at 580.

We REVERSE.

---

**DISSENT**

---

GRIFFIN, Circuit Judge, dissenting. From time to time, we should remind ourselves that we are judges, not legislators. This is such a time. Because the majority has rewritten the Civil Rights Act of 1964 to conform it to their notion of desirable public policy, I respectfully dissent.

I.

Often, when judges stray from the text of a statute and legislate from the bench, they do so ostensibly to implement their perceived intent of Congress. Were judges empowered to revise and amend statutes to further what we believe to be the "purpose" of the law, there would be no limit on judicial legislation and little need for Congress. Recognizing the consequences of such unbridled judicial forays into the legislative sphere, the Supreme Court has admonished "'time and again that a legislature says in a statute what it means and means in a statute what it says there.'" *Arlington Cent. Sch. Dist. Bd. of Ed. v. Murphy*, 548 U.S. 291, 126 S. Ct. 2455, 2459 (2006) (quoting *Connecticut Nat. Bank v. Germain*, 503 U.S. 249, 253-54 (1992)). Accordingly, "[w]hen the statutory language is plain, the sole function of the courts – at least where the disposition required by the text is not absurd – is to enforce it according to its terms." *Id*. (internal citations and quotation marks omitted). *See also Robinson v. Shell Oil Co*., 519 U.S. 337, 340 (1997) ("[The courts'] inquiry must cease if the statutory language is unambiguous and the statutory scheme is coherent and consistent.") (internal citation and quotation marks omitted); *Rubin v. United States*, 449 U.S. 424, 430 (1981) ("When we find the terms of a statute unambiguous, judicial inquiry is complete, except in rare and exceptional circumstances.").

II.

When Congress enacted the Civil Rights Act of 1964, it created a new and limited federal cause of action for retaliation in the employment setting. The relevant language of the statute provides:

> It shall be an unlawful employment practice for an employer to discriminate against any of his *employees* or *applicants* for employment . . . *because he has opposed* any practice made an unlawful employment practice by this subchapter, or *because he has made a charge*, *testified, assisted, or participated* in any manner in an investigation, proceeding, or hearing under this subchapter.

Title VII of the Civil Rights Act of 1964, § 704(a), 42 U.S.C. § 2000e-3(a) (emphasis added).

It was Congress's prerogative to create – or refrain from creating – a federal cause of action for civil rights retaliation. Congress likewise was entitled to mold the scope of such legislation, making the boundaries of coverage either expansive or limited in nature. In enacting § 704(a), Congress chose the latter. The text of § 704(a) is plain and unambiguous in its protection of a limited class of persons who are afforded the right to sue for retaliation. To be included in this class, the plaintiff must show that his employer discriminated against him "because *he* has opposed any practice made an unlawful employment practice by this subchapter, or because *he* has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e-3(a) (emphasis added).

By application of the plain language of the statute, plaintiff Eric L. Thompson is clearly not included in the class of persons for whom Congress created a retaliation cause of action because

Thompson, *himself*, did not oppose an unlawful employment practice, or make a charge, testify, assist, or participate in an investigation.

Plaintiff and the EEOC acknowledge that the text of the statute does not create a federal cause of action for third-party retaliation. Moreover, they concede that there is no evidence that Congress intended to establish such a new federal cause of action. Nonetheless, they offer various reasons why we should disregard the text of the statute in favor of their public policy preferences. The primary contention is that a "narrow" interpretation of § 704(a), limited to the statutory text, would create an "absurd" result. Further, we should defer to the EEOC's interpretation of the statute. These assertions are dependent upon the premise that the statutory language is ambiguous. It is not.

In essence, plaintiff and the EEOC request that we become the first circuit court to hold that Title VII creates a cause of action for third-party retaliation on behalf of friends and family members who have not engaged in protected activity. The majority has accepted this dubious invitation. In doing so, the majority rewrites the law. Although the majority admits begrudgingly that "a literal reading of section 704(a) suggests a prohibition on employer retaliation only when it is directed to the individual who conducted the protected activity," the majority refuses to implement the unambiguous text of the statute because, in their view, to do so would "defeat[] the plain purpose of Title VII." Majority slip op. at 3.

I disagree with the majority's faulty assumption that affirmance of the district court's order necessarily contradicts the underlying objectives of § 704(a). More fundamentally, I respectfully dissent because I would enforce the plain language of the law, rather than its perceived purpose.

III.

It is well established that to prevail upon a Title VII retaliation claim, a "plaintiff must show: (1) that he engaged in activity protected by Title VII; (2) that he was the subject of adverse employment action; and (3) that there exists a causal link between his protected activity and the adverse action of his employer." *EEOC v. Ohio Edison Co.*, 7 F.3d 541, 543 (6th Cir. 1993) (citing *Jackson v. RKO Bottlers of Toledo, Inc.*, 743 F.2d 370, 375 (6th Cir. 1984)).

In the present case, the district court ruled correctly that Thompson failed to establish the first element because there was no evidence that *he* had engaged in any sort of protected activity. Instead, Thompson's theory of recovery was that he was punished for a complaint brought by his then-fiancée. The district court reviewed the statutory text and held that "under its plain language, the statute does not authorize a retaliation claim by a plaintiff who did not himself engage in protected activity." I agree.

Previously, our only discussion of a similar issue had been limited to the dicta in *EEOC v. Ohio Edison Co.*, 7 F.3d 541 (6th Cir. 1993), and *Bell v. Safety Grooving & Grinding, L.P.*, 107 F. App'x 607 (6th Cir. 2004) (unpublished).[1] However, neither of these cases resolved the present question. In *Ohio Edison*, we held that an employee may engage vicariously in protected activity by and through the actions of his agent, and, in *Bell,* we held that the plaintiff's non-specific complaints to management were insufficient to trigger protection for him in connection with his girlfriend's EEOC discrimination charge.

Although our court has not addressed directly the precise issue at hand, the Fifth, Eighth, and Third Circuit Courts of Appeal have unanimously rejected such third-party retaliation claims.

---

[1]Unpublished opinions of this court are not precedentially binding under the doctrine of stare decisis. *United States v. Lancaster*, 501 F.3d 673, 677 (6th Cir. 2007); *United States v. Sanford*, 476 F.3d 391, 396 (6th Cir. 2007).

In *Holt v. JTM Industries*, 89 F.3d 1224 (5th Cir. 1996), a former employee claimed that he was fired because his wife, who worked for the same company, had filed a complaint under the Age Discrimination in Employment Act ("ADEA").[2]   The plaintiff in *Holt* relied upon *De Medina v. Reinhardt*, 444 F. Supp. 573 (D.D.C. 1978), *aff'd in part, remanded in part*, 686 F.2d 997 (D.C. Cir. 1982), in support of his position that protecting one spouse from retaliation for the other spouse's protected complaint was necessary to preserve the intent of Congress. *Holt*, 89 F.3d at 1226. The Court of Appeals for the Fifth Circuit rejected this argument, reasoning that while "[s]uch a rule of automatic standing might eliminate the risk that an employer will retaliate against an employee for their spouse's protected activities," it would "contradict the plain language of the statute and will rarely be necessary to protect employee spouses from retaliation." *Id*. at 1226.

The *Holt* court recognized the risk of its holding, but found that the statutory language is the law that "define[s] the types of relationships that should render automatic standing . . . ." *Id*. at 1227. The court noted that the plain language of the statute will protect most close relationships, because "[i]n most cases, the relatives and friends who are at risk for retaliation will have participated *in some manner* in a co-worker's charge of discrimination." *Id*. If there is any participation, then the relative or friend of the complaining party is protected by the plain language of the statute. *Id*. Thus, the statute denies protection only to those friends or relatives of a complaining employee who have not participated with the complaint. *Id*. In the instant case, Thompson does not claim to have assisted Regalado in preparing her suit. If he had, then he would be protected by the terms of the statute.

The Eighth Circuit employed this rationale in *Smith v. Riceland Foods, Inc.*, 151 F.3d 813 (8th Cir. 1998). The plaintiff in *Smith* urged the court to expand Title VII to "prohibit employers from taking adverse action against employees whose spouses or significant others have engaged in statutorily protected activity." *Id.* at 819. The court rejected such a construction, concluding that it "is neither supported by the plain language of Title VII nor necessary to protect third parties, such as spouses or significant others from retaliation." *Id*. (citing *Holt*, 89 F.3d at 1226-27). "Title VII already offers broad protection to such individuals by prohibiting employers from retaliating against employees for assisting or participating in any manner in a proceeding under Title VII. Accordingly, we hold that a plaintiff bringing a retaliation claim under Title VII must establish that she personally engaged in the protected conduct." *Id*. (internal quotations and alterations omitted).

In *Fogleman v. Mercy Hospital*, 283 F.3d 561 (3d Cir. 2002), the Court of Appeals for the Third Circuit addressed the issue of third-party retaliation in a substantially similar context. The plaintiff sued under the Americans with Disabilities Act ("ADA"), the ADEA, and a Pennsylvania statute, alleging that he was fired in retaliation for his father's discrimination complaint against their joint employer. As a preliminary matter, the *Fogleman* court noted that the anti-retaliation provisions of the ADA and the ADEA are nearly identical to each other and to the anti-retaliation provision of Title VII. *Id*. at 567 (citing *Krouse v. American Sterilizer Co*., 126 F.3d 494, 500 (3d Cir. 1997)). Thus, the "precedent interpreting any one of these statutes is equally relevant to interpretation of the others." *Id*. The *Fogleman* court emphatically rejected the notion of ambiguity: "Read literally, the statutes are unambiguous – indeed, it is hard to imagine a clearer way of specifying that the individual who was discriminated against must also be the individual who engaged in protected activity." *Id*. at 568.[3]   The court conceded that the case "presents a conflict

---

[2]The test for retaliation under the ADEA is the same as the test for Title VII retaliation. *Compare Shirley v. Chrysler First, Inc.*, 970 F.2d 39, 42 (5th Cir. 1992) (elements of ADEA retaliation claim) *with Ohio Edison*, 7 F.3d at 543 (elements of Title VII retaliation claim); *see also* 29 U.S.C. § 623(d).

[3]The EEOC filed an amicus brief in *Fogleman* and unsuccessfully raised the same arguments before the Third Circuit that it makes in the present case. *See* brief of EEOC as Amicus Curiae in support of Appellant, *Fogleman v. Mercy Hosp.*, 283 F.3d 561 (3d Cir. 2002) (No. 00-2263), 2001 WL 34119171.

between a statute's plain meaning and its general policy objectives," *id*. at 569, but held that when presented with such a conflict, respect for the separation-of-powers required it to implement the statutory text. *Id*.

The Third Circuit rejected the notion that enforcing the plain meaning of the statute would lead to dire results. In fact, it stated that there "are at least plausible policy reasons why Congress might have intended to exclude third-party retaliation claims."[4] *Id*. For instance, Congress could have thought that friends or relatives who would be at risk of retaliation would have likely participated in some manner in the protected discrimination charge. If so, then the class of people that would be available for employers to retaliate against would be quite small and limited to friends and relatives of employees that filed a protected complaint, but who were not close enough to the protected employee to have assisted with the complaint in any manner. *Id*. Congress also could have feared that allowing third-party retaliation claims would "open the door to frivolous lawsuits and interfere with an employer's prerogative to fire at-will employees." *Id*. at 570.

In sum, before today, no circuit court of appeals has held that Title VII creates a claim for third-party retaliation. Although plaintiff and the EEOC argue that the language of § 704(a) is ambiguous and that enforcement of the statutory text will lead to absurd results, I disagree, as do the Third, Fifth, and Eighth Circuits, which have soundly rejected such a cause of action. Indeed, the only division that exists is between the circuit courts that have rejected third-party retaliation claims and a handful of district courts that have created this new federal cause of action. The obiter dictum seized upon by the majority from a scattering of these latter cases does not represent an established mode of statutory construction.

In enacting Title VII, Congress addressed the issue of retaliation. The statute at issue is not silent regarding who falls within the scope of its protection. While it does *not* state that third parties are *not* protected, it is framed in the positive identifying those individuals who *are* protected, thus limiting the class of claimants to those who actually engaged in the protected activity. The appropriate question is not whether Congress considered the specific facts at issue in the instant case, but whether plaintiff is included within the class of persons protected by the statute. We must look to what Congress actually enacted, not what we believe Congress might have passed were it confronted with the facts at bar. Congress drew the boundaries of protection from retaliation when it enacted § 2000e-3(a). In creating a new federal cause of action for retaliation, it was not absurd for Congress to limit the class of persons who are entitled to sue to employees who personally opposed a practice, made a charge, assisted, or participated in an investigation.

IV.

Next, plaintiff argues that the court should defer to the EEOC's interpretation of Title VII in the EEOC Compliance Manual. In effect, the majority has done so by adopting the EEOC's undefined class of "related to or associated with" persons. All persons, no matter how loosely related or "associated" to the person who engaged in the protected activity, may sue for retaliation if they can show that adverse action taken against them would "discourage" the employee who actually engaged in the protected activity from exercising *his* rights. This expanded class of potential plaintiffs could lead to a proliferation of new retaliation lawsuits. Whether public policy warrants such litigation is a decision for Congress, not the courts.

Plaintiff cites *Chevron U.S.A., Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837, 842-45 (1984), for the proposition that "administrative interpretations of ambiguous statutes are entitled to

---

[4]The court mentioned that it did not find these plausible policy reasons to be particularly persuasive, but was still required to defer to Congress in the crafting of statutes. *See id*.

substantial deference."  The *Chevron* analysis, colloquially referred to as the "Chevron two-step," requires the following analysis:

> The Chevron two-step process requires the court to ask "whether the statute is silent or ambiguous with respect to the specific issue before it; if so, the question for the court [is] whether the agency's answer is based on a permissible construction of the statute."

*Singh v. Gonzales*, 451 F.3d 400, 404 (6th Cir. 2006) (citation and quotation marks omitted)). Because, as explained above, § 704(a) is not ambiguous, *Chevron* deference is not applicable.

Even assuming arguendo that the statute is ambiguous, we should not defer to the EEOC's Compliance Manual to interpret Title VII.  Most courts have rejected the notion that the EEOC Compliance Manual deserves deference.  *See*, *e.g., Rainer v. Refco, Inc.*, 464 F. Supp. 2d 742, 751 (S.D. Ohio 2006) (refusing to defer to the EEOC's manual because "an agency's interpretation of a statute is not entitled to deference where it conflicts with the plain meaning of the statutory language."); *Singh v. Green Thumb Landscaping, Inc.*, 390 F. Supp. 2d 1129, 1137-38 (M.D. Fla. 2005) ("This provision of the Manual is entirely lacking in the extensive analysis and thoroughness necessary to be entitled to substantial deference by the Court.  Ultimately, the responsibility is with the Court, not with an administrative body, to interpret the provisions of Title VII in accordance with the explicit legislative enactments set out by the Congress.") (citation omitted).

Furthermore, the interpretation proffered by the EEOC is in its own compliance manual, not a regulation that was promulgated after formal notice-and-comment rulemaking.  The Supreme Court has noted that such "interpretations" do not carry the force of law and are not worthy of *Chevron* deference:

> Interpretations such as those in opinion letters – like interpretations contained in policy statements, agency manuals, and enforcement guidelines, all of which lack the force of law – do not warrant Chevron-style deference. *See, e.g., Reno v. Koray*, 515 U.S. 50, 61 (1995) (internal agency guideline, which is not "subject to the rigors of the Administrative Procedur[e] Act, including public notice and comment," entitled only to "some deference" (internal quotation marks omitted)); *EEOC v. Arabian American Oil Co.*, 499 U.S. 244, 256-258 (1991) (interpretative guidelines do not receive *Chevron* deference); *Martin v. Occupational Safety and Health Review Comm'n*, 499 U.S. 144, 157 (1991) (interpretative rules and enforcement guidelines are "not entitled to the same deference as norms that derive from the exercise of the Secretary's delegated lawmaking powers"). *See generally* 1 K. DAVIS & R. PIERCE, ADMINISTRATIVE LAW TREATISE § 3.5 (3d ed. 1994).  Instead, interpretations contained in formats such as opinion letters are "entitled to respect" under our decision in *Skidmore v. Swift & Co.*, 323 U.S. 134, 140 (1944), but only to the extent that those interpretations have the "power to persuade."

*Christensen v. Harris County*, 529 U.S. 576, 587 (2000).

The EEOC cannot expand its own authority by simply publishing a compliance manual and expect the court to defer to its view that the statute means more than what the statutory language supports.  Moreover, at oral argument, counsel for the EEOC conceded that, in the present case, its compliance manual is not entitled to *Chevron* deference.

V.

In conclusion, the unambiguous text of the statute, not its anticipated purpose, is the law.[5] By rewriting the Civil Rights Act to conform it to their preference for public policy, the majority has assumed the role of the legislature and usurped the authority granted to Congress by the Constitution.

For these reasons, I respectfully dissent.  I would affirm the judgment of the district court.

---

[5]*Arlington Central Sch. Dist. Bd. of Ed. v. Murphy*, 126 S. Ct. at 2459; *Hartford Underwriters Ins. Co. v. Union Planter Bank, N.A.*, 530 U.S. at 6; *Connecticut Nat. Bank v. Germain*, 503 U.S. at 253-54.